IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AKIVA HERSH<br>3762 Bainbridge Road<br>Cleveland Heights, Ohio 44118<br><br>      Plaintiff,<br><br>     v.<br><br>BOARD OF CUYAHOGA COUNTY<br>COMMISSIONERS<br>2079 E. 9th Street, 8th Floor<br>Cleveland, OH 44115<br><br> And<br><br>CUYAHOGA COUNTY – OFFICE OF<br>COUNTY EXECUTIVE<br>2079 E. 9th Street, 8th Floor<br>Cleveland, OH 44115<br><br> And<br><br>DEANNA BOSWELL<br>2079 E. 9th Street, 8th Floor<br>Cleveland, OH 44115<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br>JUDGE:<br><br><br><br>**COMPLAINT FOR DAMAGES<br>AND INJUNCTIVE RELIEF**<br><br>**(Jury Demand Endorsed<br>Hereon)** |

   Plaintiff, Akiva Hersh, by and through undersigned counsel, as his Complaint against

Defendants, states and avers the following:

## **PARTIES**

1. Hersh is a resident of the city of Cleveland Heights, Cuyahoga County, State of Ohio.

2. Board of Cuyahoga County Commissioners ("Board of Commissioners") is an Ohio political

  subdivision with its principal place of business in Cleveland, Ohio.



3. Cuyahoga County – Office of County Executive ("Executive") is an Ohio political subdivision with its principal place of business in Cleveland, Ohio.

4. During his employment, Hersh was employed with the Department of Job and Family Services by the Executive and/or Board of Commissioners.

5. Upon information and belief, Defendant Deanna Boswell is a resident of Ohio.

6. Boswell is an employee of the Department of Job and Family Services by the Executive and/or Board of Commissioners.

7. Boswell did, and, at all times hereinafter mentioned, acted directly or indirectly in the interest of the Department of Job and Family Services and/or within the scope of her employment with the Board of Commissioners.

8. At all times relevant herein, Boswell supervised and/or controlled Hersh's employment in the Department of Job and Family Services.

9. All material events alleged in this Complaint occurred in Cuyahoga County.

## JURISDICTION AND VENUE

10. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Hersh is alleging federal law claims under Title VII of the Civil Rights Act of 1964, § 701 *et seq.*, as amended, 42 U.S.C.A. § 2000e *et seq.*

11. This Court has supplemental jurisdiction over Hersh's state law claims pursuant to 28 U.S.C. § 1367 as Hersh's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.



13. More than 180 days have passed since Hersh filed his formal Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in Agency Charge No. 532-2016-01478.

14. On October 22, 2016, the EEOC issued and mailed a Notice of Right to Sue letter regarding Hersh's EEOC Charge of Discrimination.

15. Hersh has received a Right to Sue letter from the EEOC, in accordance with 42 U.S.C. 2000e-5(f)(1), which is attached hereto as Exhibit 1.

16. Hersh has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

17. Hersh has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

## FACTS

18. Hersh is a former employee of the Cuyahoga County Job and Family Services.

19. Hersh is Caucasian.

20. Boswell is African American.

21. Hersh practices Orthodox Judaism.

22. Upon information and belief, Boswell practices the Christian faith.

23. Hersh was hired by the Defendants for a position with Cuyahoga County Job and Family Services on or about October 26, 2015.

24. During Hersh's employment he requested an accommodation in the form of time off from work to observe religious holidays and follow religious beliefs.

25. Hersh was treated less favorably than other employees who did not follow Orthodox Judaism because of the time he took off from work to practice his religion.



26. Hersh regularly completed as many or more assigned tasks as compared to his coworkers despite the time he took off from work to practice his religion.

27. Hersh received a performance evaluation for the first 120 days of his employment on April 5, 2016 ("April 2016 Performance Evaluation").

28. The only negative reference to Hersh's performance on the April 2016 Performance Evaluation concerned Hersh's attendance.

29. The April 2016 Performance Evaluation criticized Hersh for utilizing time off work to accommodate his religious beliefs.

30. Hersh's religion was used as a factor when considering and evaluating his work performance.

31. As a result of the April 2016 Performance Evaluation, Hersh's probationary employment status was extended.

32. Defendants used Hersh's religion as a factor in deciding whether to extend Hersh's probationary employment status.

33. During the month of April 2016, Hersh and several of Hersh's coworkers began preparing to hold a Holocaust Memorial Week during the week of May 2, 2016 through May 6, 2016 ("May 2016 Holocaust Memorial Week").

34. Hersh spent personal time and personal funds on preparing for the May 2016 Holocaust Memorial Week.

35. On or about April 15, 2016, Hersh met with Boswell, and informed her that the following materials were going to presented for the May 2016 Holocaust Memorial Week: at least four videos; pamphlets containing the biographies of individuals who perished in the Holocaust; poems, diaries and personal writings from the time period; examples of anti-Semitic literature and propaganda; Holocaust survivor speaker; moment of silence; wall of remembrance;



artwork from the period; music, art, and poetry created inside death camps; daily emails with schedule of events and agendas.

36. On or about April 15, 2016, Hersh met with Boswell, and informed her that he was planning to have a Holocaust survivor speak during the May 2016 Holocaust Memorial Week.

37. Boswell refused to approve Hersh's Holocaust survivor speaker despite the fact that the speak was willing to appear without being compensated.

38. Boswell regularly approved payments for speakers to address employees on the topics of team building and Black History Month.

39. On or about April 28, 2016, Hersh met with Boswell and two other coworkers to discuss content that was to be displayed during the May 2016 Holocaust Memorial Week.

40. At no time on or before April 28, 2016, did Boswell inform Hersh that he had to seek additional approval for content that was to be displayed during the May 2016 Holocaust Memorial Week.

41. At no time on or before April 28, 2016, did Boswell inform Hersh that the proposed contents, materials, or schedule for the May 2016 Holocaust Memorial Week were unacceptable.

42. On or about April 28, 2016, Hersh asked Boswell if the plans for the May 2016 Holocaust Memorial Week were acceptable and Boswell responded affirmatively.

43. On or about May 2, 2016, Hersh posted flyers advertising the May 2016 Holocaust Memorial Week.

44. On or about May 2, 2016, Boswell removed the flyers that Hersh posted to advertise the May 2016 Holocaust Memorial Week.

45. On or about May 2, 2016, Boswell told Hersh she had removed the flyers because Hersh did go through the proper channels in order to post the flyers.



46. At no time prior to May 2, 2016, did Boswell remove flyers for Christian activities that were not pre-approved by Boswell.

47. At no time prior to May 2, 2016, did Boswell remove flyers for sporting activities that were not pre-approved by Boswell.

48. At no time prior to May 2, 2016, did Boswell remove flyers for Black History Month activities that were not pre-approved by Boswell.

49. At no time prior to May 2, 2016, did Boswell remove flyers for sex workers that were not pre-approved by Boswell.

50. On or around May 2, 2016, Boswell permitted flyers advertising for a Christian church event titled, "Lift Up Jesus" to be displayed in the Job and Family Services offices.

51. On or around May 2, 2016, Boswell permitted flyers advertising for job openings for "exotic entertainers" and "pole dancers" to be displayed in the Job and Family Services offices.

52. On or around May 2, 2016, Boswell told Hersh she had to personally approve all the materials for the May 2016 Holocaust Memorial Week.

53. Boswell knew that the materials for the May 2016 Holocaust Memorial Week were too numerous to be approved before the scheduled time for the May 2016 Holocaust Memorial Week.

54. When Hersh asked when Boswell would be able to approve the materials she stated, "Well, I'm very busy now, I have other important things to do."

55. When Hersh asked when Boswell would be able to approve the materials she stated, "You're not going to back me into a deadline. I'm way too busy."

56. On or about May 2, 2016, Boswell told Hersh, "you work up under me."



57. On or about May 2, 2016, Boswell told Hersh that she did not approve the May 2016 Holocaust Memorial Week.

58. On or around May 2, 2016, Boswell effectively cancelled the May 2016 Holocaust Memorial Week.

59. During Hersh's employment, Hersh witnessed Boswell make herself available to assist African American employees with activities for Black History Month.

60. Upon information and belief, Boswell told a female Caucasian Russian Jewish employee that the employee did not "understand anything because of *your* cultural differences."

61. Upon information and belief, Boswell instructed a Caucasian Jewish employee to read a poem for Black History Month, but denied her the ability to participate in the May 2016 Holocaust Memorial Week.

62. On or about May 2, 2016, Hersh complained to a coordinator, Mayralie Vargas-Bremer, about Boswell actions in cancelling the May 2016 Holocaust Memorial Week.

63. On or about May 2, 2016, Hersh complained to a coordinator, Mayralie Vargas-Bremer, about being treated less favorably because of his race, Caucasian, and his religion, Orthodox Jewish.

64. On or about May 4, 2016, Hersh contacted the Equal Employment Opportunity Commission to report being treated less favorably because of his race and religion and the anti-Semitism in the cancellation of the May 2016 Holocaust Memorial Week.

65. On or about May 4, 2016, Hersh contacted a union representative at Cuyahoga County Job and Family Services to report being treated less favorably because of his race and religion and the anti-Semitism in the cancellation of the May 2016 Holocaust Memorial Week.

66. Defendants knew that Hersh contacted the EEOC and complained about discrimination.

67. Boswell knew that Hersh contacted the EEOC and complained about discrimination.



68. Boswell knew that Hersh complained about discrimination to both Vargas-Bremer and the Union.

69. Thereafter, Boswell began to harass Hersh about overall work performance and attendance.

70. Boswell singled out Hersh compared to other employees when she harassed Hersh about his overall work performance and attendance.

71. On May 9, 2016, Defendants issued or caused to be issued an administrative subpoena duces tecum to Hersh's rabbi for verification of Hersh's "employment status" ("Mordechai Subpoena").

72. Boswell participated in the decision to issue the Mordechai Subpoena.

73. Defendants issued the Mordechai Subpoena in an effort to target and harass Hersh.

74. Defendants issued the Mordechai Subpoena in retaliation for Hersh's opposition to discrimination based on race and religion.

75. Boswell issued the Mordechai Subpoena in retaliation for Hersh's opposition to discrimination based on race and religion.

76. Defendants issued the Mordechai Subpoena because of Hersh's race and religion.

77. Boswell issued the Mordechai Subpoena because of Hersh's race and religion.

78. On May 11, 2016, Defendants and Boswell conducted a performance evaluation of Hersh ("May 11, 2016 Hersh Evaluation").

79. The May 11, 2016 Hersh Evaluation was unfavorable.

80. The May 11, 2016 Hersh Evaluation referenced criticized Hersh for taking time off work for religious purposes.

81. The May 11, 2016 Hersh Evaluation referenced several unfounded performance deficiencies.

The Employee's Attorney.™ 

82. Prior to the May 11, 2016 Hersh Evaluation, Hersh had never been disciplined for or had any performance issues other than attendance.

83. The May 11, 2016 Hersh Evaluation was Defendants' and Boswell's attempt to create a paper-trail against Hersh ultimately designed to end with his termination.

84. Defendants and Boswell conducted the May 11, 2016 Hersh Evaluation because of Hersh's race and religion.

85. Defendants and Boswell conducted the May 11, 2016 Hersh Evaluation in retaliation for Hersh's opposition to discrimination based on race and religion.

86. Hersh submitted a written rebuttal to the May 11, 2016 Hersh Evaluation and requested both Human Resources and his Union to address why some of his absences related to his religious accommodation were still showing up as a negative critique on his performance evaluation.

87. Prior to being terminated, Hersh engaged in protected activity by making a written complaint about religious discrimination.

88. Prior to being terminated, Hersh requested extended leave to cover absences designated as "AWOL" by Defendants.

89. Defendants denied Hersh's requests for extended leave.

90. Defendants' denial of Hersh's requests for extended leave was issued because of Hersh's race and religion.

91. Defendants' denial of Hersh's requests for extended leave was issued in retaliation for Hersh's opposition to discrimination based on race and religion.

92. Hersh was terminated on or about June 8, 2016.

93. Hersh's termination was the result of race discrimination against him by Defendants, by and through Boswell.

The Employee's Attorney.™ 

94. Hersh's termination was the result of religious discrimination against him by Defendants, by and through Boswell.

95. Hersh's termination was the result of unlawful retaliation against him by Defendants, by and through Boswell.

96. As a result of Defendants' racial discrimination against Hersh, he suffered severe emotional distress.

97. As a result of Defendants' religious discrimination against Hersh, he suffered severe emotional distress.

98. As a result of being termination unlawfully, Hersh suffered severe emotional distress.

### COUNT I: DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e-2 BASED ON RELIGION

99. Hersh restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

100. Defendants treated Hersh differently from other similarly situated employees based on his religious beliefs according to Orthodox Judaism.

101. Defendants granted the requests for extended leave for probationary made by non-Jewish employees while denying Hersh's request for extended leave because of his religion.

102. Defendants assessed the performance of non-Caucasian employees differently and more favorably than Hersh based on Hersh's religion.

103. Defendants encouraged and facilitated team building and cultural awareness events for non-Jewish employees, while cancelling, censoring, and interfering with team building and cultural awareness events planned by Jewish employees, like Hersh.

104. Defendants terminated Hersh based on his religion.



The Employee's Attorney.™

105. Defendants violated 42 U.S.C. § 2000e-2, *et seq.* by discriminating against and terminating Hersh based on his religion.

106. As a direct and proximate cause of Defendants' conduct, Hersh suffered and will continue to suffer damages.

**COUNT II: DISCRIMINATION IN VIOLATION OF R.C. § 4112.01, *ET SEQ.* BASED ON RELIGION**

107. Hersh restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

108. Defendants treated Hersh differently from other similarly situated employees based on his religious beliefs according to Orthodox Judaism.

109. Defendants granted the requests for extended leave for probationary made by non-Jewish employees while denying Hersh's request for extended leave because of his religion.

110. Defendants assessed the performance of non-Caucasian employees differently and more favorably than Hersh based on Hersh's religion.

111. Defendants encouraged and facilitated team building and cultural awareness events for non-Jewish employees, while cancelling, censoring, and interfering with team building and cultural awareness events planned by Jewish employees, like Hersh.

112. Defendants terminated Hersh based on his religion.

113. Defendants violated R.C. § 4112.01, *et seq.* by discriminating against and terminating Hersh based on his religion.

114. As a direct and proximate cause of Defendants' conduct, Hersh suffered and will continue to suffer damages.

**COUNT III: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e-2**



The Employee's Attorney.™

115. Hersh restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

116. Defendants treated Hersh differently from other similarly situated employees based on his race.

117. Defendants granted the requests for extended leave for probationary made by non-Caucasian employees while denying Hersh's request for extended leave because of his race.

118. Defendants assessed the performance of non-Caucasian employees differently and more favorably than Hersh based on Hersh's race.

119. Defendants encouraged and facilitated team building and cultural awareness events for non-Caucasian employees, while cancelling, censoring, and interfering with team building and cultural awareness events planned by Caucasian employees, like Hersh.

120. Defendants terminated Hersh based on his race.

121. Defendants violated 42 U.S.C. § 2000e-2, *et seq.* by discriminating against and terminating Hersh based on his race.

122. As a direct and proximate cause of Defendants' conduct, Hersh suffered and will continue to suffer damages.

**COUNT IV: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01, *ET SEQ.***

123. Hersh restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

124. Defendants treated Hersh differently from other similarly situated employees based on his race.

125. Defendants granted the requests for extended leave for probationary made by non-Caucasian employees while denying Hersh's request for extended leave because of his race.



126. Defendants assessed the performance of non-Caucasian employees differently and more favorably than Hersh based on Hersh's race.

127. Defendants encouraged and facilitated team building and cultural awareness events for non-Caucasian employees, while cancelling, censoring, and interfering with team building and cultural awareness events planned by Caucasian employees, like Hersh.

128. Defendants terminated Hersh based his race.

129. Defendants violated R.C. § 4112.01, *et seq.* by discriminating against and terminating Hersh based on his race.

130. As a direct and proximate cause of Defendants' conduct, Hersh suffered and will continue to suffer damages.

### COUNT V: RETALIATION IN VIOLATION OF 42 U.S.C. § 2000e-3(a)

131. Hersh restates each and every prior paragraph of this complaint, as if it were fully restated herein.

132. During his employment, Hersh complained to Defendants about race discrimination and harassment.

133. During his employment, Hersh filed internal written complaints of race discrimination and harassment with Defendants.

134. During his employment, Hersh filed internal written complaints of religious discrimination and harassment with Defendants.

135. During his employment, Hersh filed a Charge of Discrimination with the EEOC regarding race and religious discrimination and retaliation.

136. Hersh's complaints of race and religious discrimination, harassment and retaliation were protected activity under 42 U.S.C. § 2000e-3(a).

The Employee's Attorney.™ 

137. After Hersh engaged in protected activity by reporting the acts of race and religious discrimination, harassment and retaliation against him, Defendants retaliated against Hersh, including terminating his employment in violation of 42 U.S.C. § 2000e-3(a).

138. After Hersh engaged in protected activity by reporting the acts of race and religious discrimination, harassment and retaliation against him, Defendants retaliated against Hersh, including issuing negative performance evaluations in violation of 42 U.S.C. § 2000e-3(a).

139. After Hersh engaged in protected activity by reporting the acts of race and religious discrimination, harassment and retaliation against him, Defendants retaliated against Hersh, including issuing a subpoena to his place of worship in violation of 42 U.S.C. § 2000e-3(a).

140. After Hersh engaged in protected activity by reporting the acts of race and religious discrimination, harassment and retaliation against him, Defendants retaliated against Hersh, including denying Hersh's request for extended leave in violation of in violation of 42 U.S.C. § 2000e-3(a).

141. As a direct and proximate cause of Defendants' retaliatory conduct, Hersh suffered and will continue to suffer damages.

**COUNT VI: RETALIATION IN VIOLATION OF R.C. § 4112.02(I)**

142. Hersh restates each and every prior paragraph of this complaint, as if it were fully restated herein.

143. During his employment, Hersh complained to Defendants about race discrimination and harassment.

144. During his employment, Hersh complained to Defendants about religious discrimination and harassment.



145. During his employment, Hersh filed internal written complaints of race and religious discrimination and harassment with Defendants.

146. During his employment, Hersh filed a Charge of Discrimination with the EEOC regarding race and religious discrimination and retaliation.

147. Hersh's complaints of race and religious discrimination, harassment and retaliation were protected activity under R.C. § 4112.02(I).

148. After Hersh engaged in protected activity by reporting the acts of race and religious discrimination, harassment and retaliation against him, Defendants retaliated against Hersh, including terminating his employment in violation of R.C. § 4112.02(I) and R.C. § 4112.99.

149. After Hersh engaged in protected activity by reporting the acts of race and religious discrimination, harassment and retaliation against him, Defendants retaliated against Hersh, including issuing negative performance evaluations in violation of R.C. § 4112.02(I) and R.C. § 4112.99.

150. After Hersh engaged in protected activity by reporting the acts of race and religious discrimination, harassment and retaliation against him, Defendants retaliated against Hersh, including issuing a subpoena to his place of worship in violation of R.C. § 4112.02(I) and R.C. § 4112.99.

151. After Hersh engaged in protected activity by reporting the acts of race and religious discrimination, harassment and retaliation against him, Defendants retaliated against Hersh, including denying Hersh's request for extended leave in violation of R.C. § 4112.02(I) and R.C. § 4112.99.

152. As a direct and proximate cause of Defendants' retaliatory conduct, Hersh suffered and will continue to suffer damages.



**COUNT VII: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION IN VIOLATION OF R.C § 4112.02(J), § 4112.99**

153. Plaintiff restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

154. Pursuant to R.C. § 4112.02(J), it is unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

155. Boswell aided, abetted, incited, coerced, and/or compelled the Executive and/or Board of Commissioners' discriminatory actions in cancelling, censoring, and interfering with a team building and cultural awareness event planned by Hersh in memorial of the Holocaust.

156. Boswell aided, abetted, incited, coerced, and/or compelled the Executive and/or Board of Commissioners' discriminatory actions in issuing a subpoena to Hersh's place of worship based on her animus toward Hersh's race and religion.

157. Boswell aided, abetted, incited, coerced, and/or compelled the Executive and/or Board of Commissioners' discriminatory actions in issuing an overly harsh and unwarranted negative performance evaluation of Hersh based on her animus toward Hersh's race and religion.

158. Boswell aided, abetted, incited, coerced, and/or compelled the Executive and/or Board of Commissioners' discriminatory actions in using Hersh's absences for religious purposes against him in issuing overly harsh and unwarranted negative performance evaluations based on her animus toward Hersh's race and religion.

159. Boswell aided, abetted, incited, coerced, and/or compelled the Executive and/or Board of Commissioners' discriminatory actions by making offensive comments meant to harass and demean Caucasian Jewish employees based on her animus toward non-African American Jewish employees.



160. Boswell aided, abetted, incited, coerced, and/or compelled the Executive and/or Board of Commissioners' discriminatory termination of Hersh.

161. As a direct and proximate cause of Armstrong's conduct, Hawkins suffered and will continue to suffer damages.

### COUNT VIII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

162. Hersh restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

163. Defendants intended to cause Hersh emotional distress, or knew that its acts or omissions would result in serious emotional distress to Hersh.

164. Defendants' conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community.

165. As a direct and proximate cause of Defendants' acts and omissions as set forth above, Hersh has suffered mental anguish of such a serious nature that no reasonable person could be expected to endure it.

166. As a direct and proximate cause of Defendants' conduct and the resulting emotional distress, Hersh suffered and will continue to suffer damages.

### DEMAND FOR RELIEF

WHEREFORE, Akiva Hersh demands from Defendant the following:

(a) Issue a permanent injunction:

    (i) Requiring Defendant to abolish discrimination, harassment, and retaliation;

    (ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and



    (iv)    Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring Defendant to restore Hersh to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(c) An award against Defendant of compensatory and monetary damages to compensate Hersh for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Hersh's claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

    Respectfully submitted,

*/s/ Ken E. Smith*
Ken E. Smith (0090761)
**THE SPITZ LAW FIRM, LLC**
WaterTower Plaza
25200 Chagrin Blvd., Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:     (216) 291-5744
Email: ken.smith@SpitzLawFirm.com

*Attorney For Plaintiff Akiva Hersh*



18

## **JURY DEMAND**

Plaintiff Akiva Hersh demands a trial by jury by the maximum number of jurors permitted.

> */s/ Ken E. Smith*
> Ken E. Smith (0090761)

